IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**COOPER TIRE & RUBBER COMPANY,**                         **PLAINTIFF,**

**VS.**                                                              **CIVIL ACTION NO. 3:02CV210-P-A**

**JOHN BOOTH FARESE, ET AL.,**                                **DEFENDANTS.**

## MEMORANDUM OPINION

These matters come before the court upon Bruce Kaster and Bruce Kaster, P.A.'s second motion for summary judgment [408-1] and John Booth Farese and Farese, Farese & Farese, P.A.'s motion to join in Kaster's second motion for summary judgment [411-1]. After due consideration of the motions, the court is prepared to rule.

## I. FACTUAL BACKGROUND

The basic facts of this case have been thoroughly discussed by this court's prior Opinion and Order granting the defendants' first summary judgment and in the Fifth Circuit Court of Appeals' Opinion vacating that Order in *Cooper Tire & Rubber Company v. Farese*, 423 F.3d 446 (5th Cir. 2005). Suffice it to say for the purposes of the instant motion for summary judgment, the plaintiff has levied three claims against the defendant lawyers and their law firms: (1) tortious interference with business relations; (2) tortious interference with a contract; and (3) conspiracy.

## II. DISCUSSION

### A. Mississippi Code Annotated § 97-9-9

Essentially, all three causes of action depend totally on the validity of a termination agreement entered into between Cooper Tire and their former employee, Cathy Barnett. On 14

1

October 2001 Barnett, who is not a party to this action, went to attorney John Booth Farese to counsel her regarding the terms of the termination agreement proposed by Cooper Tire, the latter of whom had decided to terminate Barnett for allegedly embezzling gift certificates. As the Fifth Circuit noted in *Cooper Tire*:

> Through Farese's negotiations, Barnett received numerous concessions: (1) her indebtedness for the alleged embezzlement was reduced from $3,000 to $1,000; (2) Cooper Tire would not press criminal charges; (3) it would not oppose her application for unemployment benefits; (4) it agreed to language it would use if a future employer requested a reference for Barnett; and (5) her husband's employment would not be affected by her resignation or actions.

423 F.3d at 458. In consideration for these concessions, Cooper Tire received the benefit of a non-disparagement clause wherein Barnett agreed not to make any negative statements about Cooper Tire. More specifically, Barnett agreed:

> I agree (a) not to make any public statement or statements to the media or, directly or indirectly, provide information of any kind, whether written or non-written, to, or otherwise collaborate in any way in the taking of any action with, any third party concerning the Company, without first receiving the written approval of the Company; and (b) not to take action or make any statements which could cause the Company any embarrassment or humiliation or otherwise reflect negatively on the Company or cause the Company to be held in disrepute. In the event of a violation of the terms and conditions of this Section, I agree the Company shall have the right to seek any injunctive, equitable and other legal relief available to it. Should I breach the provisions of this Section, the remaining provisions of this Agreement shall remain in full force and effect and I will not assert or reassert any actions, causes of actions or claims which I may now have against the Company.

Paragraph 49203 of the Agreement .

In its Opinion and Order granting the defendants' first motion for summary judgment, this court ruled *inter alia* that the agreement was void for illegality and as violative of public policy because the non-disparagement clause was more likely than not used by Cooper Tire to prevent their former employee from divulging her allegation that they instructed her to destroy documents subject

to a federal court discovery order in on-going litigation in Arkansas.[1] The Fifth Circuit disagreed, ruling that "while the district court stated correctly that illegal contracts are unenforceable in Mississippi, it cited no Mississippi statutes or case law declaring non-disparagement clauses illegal." 423 F.3d at 456-57. The Court of Appeals went on to note that "Appellees do not cite any statute, constitutional provision, case law, or practice by Mississippi government officials that supports non-disparagement clauses being illegal *per se*." 423 F.3d at 457. The Court quoted the Mississippi Supreme Court who in *Martin v. Estate of W.W. Martin*, 599 So.2d 966, 968 (Miss. 1992) held that

> The power to invalidate contracts or agreements on the ground they violate public policy is far reaching and easily abused, and this court is committed to the doctrine that the public policy of the state must be found in its constitution and statutes 'and when they have not directly spoken, then [it must be found] in the decisions of the courts and the constant practice of the government officials.'

423 F.3d at 457.

Among his arguments in his second motion for summary judgment, Kaster poses an entirely new theory – one that it is undisputed was never raised before this court nor in the appeals process. In fact, Cooper Tire never addressed the argument in their response to Kaster's second motion for summary judgment. The theory is simple: the termination agreement is void in its entirety as illegal because it violated Mississippi Code Annotated § 97-9-9. This statute provides:

---

[1] There has been much ado about Cooper Tire's representation to the Fifth Circuit Court of Appeals that Barnett recanted her testimony that she was instructed by Cooper Tire to burn documents subject to a discovery order. If by that statement, Cooper Tire meant to say that she testified before District Judge Howard in the federal litigation in Arkansas that no one told her to "burn" documents, Cooper Tire's representation would appear technically accurate. However, Cooper Tire's representation was disingenuous since Barnett confirmed her allegation that Cooper Tire clearly communicated to her to destroy the documents, though she chose to burn them. There is no evidence that she ever recanted her basic allegation that she was instructed to destroy the documents by Cooper Tire. Whether or not Cooper Tire told her to destroy them by burning is irrelevant.

> Every person having a knowledge of the actual commission of any offense punishable by imprisonment in the penitentiary for any other term than for life, who shall take any money or property of another, or any gratuity or reward, or any engagement or promise therefor, upon any agreement or understanding, express or implied, to compound or conceal any such crime, or to abstain from prosecution therefor, or to withhold any evidence thereof shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding six months.

Miss. Code Ann. § 97-9-9.

In other words, it is a felony in Mississippi for someone to agree to abstain from pressing charges for a crime in exchange for a reward of some sort. Kaster argues that the termination agreement violated § 97-9-9 because Cooper Tire, who had knowledge of Barnett's commission of embezzlement, agreed *inter alia* not to press charges for that crime and to reduce repayment from $3,000 to $1,000, in exchange for a reward in the form of Barnett's agreement not to disparage Cooper Tire. Cooper Tire chose not to address this argument in their response, nor did they file a sur-reply to Kaster's restatement of the argument in his reply.

It is undisputed that Cathy Barnett's alleged misuse of gift certificates for her personal gain would violate Mississippi's grand larceny and embezzlement statutes, Mississippi Code Annotated §§ 97-17-41 and 97-23-19, respectively. Both of those crimes carry penalties including confinement in the penitentiary. Both crimes involve amounts of money in excess of $500.00 and in this case, it is undisputed that Cooper Tire alleges that Barnett stole approximately $3,000.00 worth of gift certificates.

Kaster's new argument is compelling and is well-taken.

With regard to the law-of-the-case doctrine as it applies to cases that were once appealed and then remanded to the district court, the Court of Appeals in *In re Felt*, 255 F.3d 220 (5th Cir. 2001)

4

wrote:

> The law of the case doctrine applies not only to issues decided explicitly, but also to everything decided "by necessary implication." And, though not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.

Because it is undisputed that Kaster never raised this argument before this court prior to its original Opinion and Order granting summary judgment, nor before the Fifth Circuit during the appeals process, this court concludes that the issue is not precluded by the law of the case doctrine since it was never decided by necessary implication, nor was it a necessary predicate to the ability to address the issue of whether the termination agreement was void for illegality. This is because the basis for this court's original conclusion that the agreement was illegal was its belief that Cooper Tire entered into the agreement in order to prevent their former employee from divulging that they had told her to destroy documents subject to a federal court order – especially given that Barnett, someone suspected by her employer to have embezzled at least $3,000.00 in gift certificates, appeared to reap a great deal of benefits in the termination agreement in exchange for merely promising not to disparage Cooper Tire. No mention was made by the parties or either court that the agreement in and of itself was violative of § 97-9-9 since that statute provides that such agreements cannot be made in the first place, regardless of what Cooper Tire's motivation was in drafting it.

It is well-settled law that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 322 (l986). Discovery has been completed in this case. Thus, even though the Fifth Circuit reversed this court's original decision to grant summary judgment on different grounds, this court is mandated by Rule 56(c) and U.S. Supreme Court authority to grant summary judgment again on new grounds because it is warranted and the basis therefor has neither been argued before nor was it implicitly or explicitly precluded by the Fifth Circuit's rulings in *Cooper Tire*.

Because the subject termination agreement between Cooper Tire and Cathy Barnett violated Miss. Code Ann. § 97-9-9, the agreement in its entirety is void for illegality. *See Cooper Tire*, 423 F.3d at 457 ("illegal contracts are unenforceable in Mississippi...."); *Powelson v. National Airlines, Inc.*, 71 So.2d 467, 471 (Miss.1954) ("No action can be based on an illegal agreement. The foundation of this rule is in the policy of discouraging illegal agreements by refusing all judicial aid to the parties to them.").

Tortious interference with business relations requires showing: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." *Cooper Tire*, 423 F.3d at 458-59 (quoting *PDN, Inc. v. Loring*, 843 So.2d 685, 688 (Miss.2003)). Because the subject termination agreement is void for illegality, Cooper Tire cannot establish as a matter of law the third element required for demonstrating tortious interference with business relations, even viewing the facts in a light most favorable to Cooper Tire as the non-movant. It is undisputed that the very premise of this claim is that the defendants tortiously interfered with Cooper Tire's business relations because they assisted Cathy Barnett in violating the

termination agreement by writing the subject affidavit and disseminating it. In other words, if the termination agreement is unenforceable and void for illegality, it could not have constituted and "unlawful purpose" to interfere with it.

Tortious interference with business relations requires the same elements, in addition to "malicious interference with a valid contract." *Cooper Tire*, 423 F.3d at 459 (citing *Levens v. Campbell*, 733 So.2d 753, 759-61)). Not only can Cooper Tire not establish the third element of this tort for the same reasons discussed above, Cooper Tire cannot establish as a matter of law tortious interference with a contract because there was no valid contract with which to interfere.

Civil conspiracy requires a showing: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result." *Id*. (citing *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004)). Since the termination agreement is void for illegality, Cooper Tire cannot as a matter of law establish any unlawful overt acts.

The court finds no compelling reason not to allow the Farese defendants to join in the instant motion for summary judgment. Though the Farese defendants' motion to join was filed after the motions deadline, four days is a *de minimis* violation. Given that Kaster's § 97-9-9 applies equally to the Farese defendants and it would defy judicial efficiency to disallow a joinder.

Finally, this court notes that the aforesaid conclusion is not to say that non-disparagement clauses are *per se* illegal in Mississippi. Rather, the non-disparagement clause and the entire contract containing it is illegal in this particular case because it violated Mississippi Code Annotated § 97-9-9.

**B. Ambiguity in the Employment Contract**

The Fifth Circuit in *Cooper Tire* held that this court erred when it ruled that given there was an ambiguity regarding the effective date of the termination agreement, the ambiguity had to be construed against the drafter, Cooper Tire, in favor of Cathy Barnett as a matter of law, thereby rendering Cooper Tire's causes of actions invalid. The Court of Appeals ruled that even though the decision of whether there is an ambiguity is a question for the court, the decision on how to construe the ambiguity is one for the jury, citing *Shelton v. American Insurance Company*, 507 So.2d 894, 896 (Miss. 1987) ("where a contract is ambiguous and uncertain, questions of fact are presented which are to be resolved by the trier of facts, [therefore], the granting of summary judgment is inappropriate.")

The undersigned respectfully requests guidance on this issue since it is the understanding of this court that the bulk of Mississippi law suggests otherwise. But for the Court of Appeals' specific disagreement with this position in *Cooper Tire*, 423 F.3d at 456, this court would once again grant summary judgment independently because once the ambiguity is construed against the drafter, the termination agreement would not have been effective when the subject affidavit was written. Alternatively, if necessary for the issue to be properly before the Court of Appeals, this court respectfully grants Kaster's second motion for summary judgment on this independent basis.

Since it comes up quite often, below is this court's understanding of the issue of whether an ambiguity must be construed against the drafter is a question of fact or of law. The rules discussed below primarily involve insurance contracts, and while the contract at issue in this case is not an insurance contract, it would seem that the rules are still applicable. Indeed, the case of *Shelton*, cited by the Court of Appeals in *Cooper Tire*, also involved an insurance contract.

8

Furthermore, the language in *Shelton* quoted by the Court of Appeals cited *Dennis v. Searle*, 457 So.2d 941, 945 (Miss. 1984), which was overruled by *Thornhill v. System Fuels, Inc.*, 523 So.2d 983, 1007 n. 22 (Miss. 1988).

"[T]he *existence* of a contractual ambiguity is an issue of law." *Cooper Tire*, 423 F.3d at 455; *see also Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 717 (Miss. 2004)("The proper construction of an insurance contract provision is a question of law...."); *Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss.1998) ("The interpretation of insurance policy language is a question of law."). The Court in *Farmland Mut. Ins. Co. v. Scruggs* went on to say that "[i]t is also bedrock law 'that ambiguous terms in an insurance contract **are** to be construed most strongly against the preparer .....'" *Id*. (citing *U.S. Fidelity & Guar. Co. v. Omnibank*, 818 So.2d 196, 198 (Miss. 2002)) (emphasis added).

There are many other cases by the Mississippi Supreme Court, decided both before and after the 1987 decision in *Shelton*, that use terms strongly indicating that construction of ambiguities in a contract against the drafter is compulsory and therefore a question of law.[2] *E.g., Caldwell v. Hartford Acc. & Indem. Co.*, 160 So.2d 209, 212-13 (Miss. 1964) ("The rule that the insurance policy prepared by the insurer must be construed more strongly against the insurance company, and that any fair doubt should be resolved in favor of the insured, is so well-settled in the law of insurance that we hesitate to cite any cases... It is equally well-settled that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which

---

[2] The order of these cases is not chronological but rather is based upon Westlaw's Most Cited Cases chart for KeyCite Headnote 217k1832(1) for Mississippi which lists approximately forty-three cases in descending order of times cited for the proposition that ambiguous language in a contract must be resolved against the drafter.

gives greater indemnity to the insured **will** prevail.") (emphasis added); *Government Employees Ins. Co. v. Brown*, 446 So.2d 1002, 1006 (Miss. 1984) (in a certified question from the Fifth Circuit, the Mississippi Supreme Court wrote that it "still recognizes the general principle that in any insurance contract, unclear and ambiguous language **will** be construed in favor of the insured.") (emphasis added); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss.1994) ("Any ambiguities in an insurance contract **must** be construed against the insurer and in favor of insured ....") (emphasis added);; *Lewis*, 730 So.2d at 68 ("Under Mississippi law, ambiguous and unclear policy language **must** be resolved in favor of the insured.") (emphasis added); *Home Owners Ins. Co. v. Keith's Breeder Farms, Inc.*, 227 So.2d 293, 294 (Miss.1969) ("[T]he rule is that any ambiguity in the language of the policy **will** be construed more strictly against the writer of the policy.") (emphasis added); *Penn v. Commercial Union Fire Ins. Co. of N.Y.*, 101 So.2d 535, 536 (Miss.1958) ("[T]he universal rule is that it **must** be construed most strongly against the insurer.") (emphasis added); *New York Life Ins. Co. v. Blaylock*, 110 So. 432, 433 (Miss.1926) ("[W]hen there are two reasonable constructions of the contract of insurance, one favorable to the insurance company and the other to the insured, it is the **duty of the courts** to adopt the one favorable to the insured, because the contract is to be construed most strongly against the writer of it. This is the universal rule, as we find it in all jurisdictions.") (emphasis added).

The court recognizes that the aforementioned authorities deal with insurance contracts. However, there are other Mississippi authorities applying the rule of *contra proferentum* to contracts in general. *E.g.*, *Union Planters Bank Nat'l Assoc. v. Rogers*, 912 So.2d 116, 120 (Miss.2005) (wherein the Mississippi Supreme Court itself construed the contractual ambiguities against the drafter); *Wade v. Shelby*, 722 So.2d 698, 701 (Miss. 1998) ("[A]ny ambiguities in the

contract **must** accordingly be construed against [the drafter].") (emphasis added); *Banks v. Banks,* 648 So.2d 1116, 1121 (Miss. 1994) ("There is also the universal rule of construction that when the terms of a contract are vague or ambiguous, they **are** always construed more strongly against the party preparing it.") (emphasis added); Ford v. State Farm Ins. Co., 625 So.2d 792, 797 (Miss. 1993) ("[A]n ambiguous contract **is** construed against the drafter.") (emphasis added).

Use of the terms "will," "must,""are," and "duty of the courts" strongly indicate that if the court determines there is an ambiguity in a contract (such a finding necessarily presuming not that a mere dispute alone shows an ambiguity but that there are at least two reasonable but conflicting interpretations of an operative provision), then it is for the court to decide as a matter of law that the ambiguity must be resolved against the drafter when there are only two ways to construe the ambiguity.

In this case, there are only two ways to construe the ambiguity: either the termination agreement "became enforceable seven days after 4 October (11 October) or 23 October (30 October)." *Cooper Tire*, 423 F.3d at 455. If 11 October, then the subject affidavit ostensibly ran afoul of the agreement. If 23 October, then the affidavit did not run afoul of the agreement. It seems there are no other factual inquiries required to resolve this ambiguity in this case, especially since the parties agree that these are the two possibilities.

There is no Mississippi Model Jury Instruction regarding construction of an ambiguous contractual term against the drafter. It would seem strange to issue an instruction to a jury that a given contractual term is ambiguous as a matter of law – *i.e.*, an ambiguity subject to only two interpretations: one in favor of the drafter and one in favor of the non-drafter – and that therefore the jury must construe the ambiguity against the drafter. That would be akin to a directed verdict.

## III. CONCLUSION

For the reasons discussed above, Bruce Kaster and Bruce Kaster, P.A.'s second motion for summary judgment [408-1] and John Booth Farese and Farese, Farese & Farese, P.A.'s motion for to join in Kaster's second motion for summary judgment [411-1] should be granted. Therefore, all of the plaintiff's claims against all of the defendants should be dismissed with prejudice. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of January 9, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE