# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**COOPER TIRE AND RUBBER CO.**                                             **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO.: 3:02CV210-SA-JAD**

**JOHN BOOTH FARESE, et. al**                                             **DEFENDANTS**

## MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO STRIKE AND MOTION TO EXCLUDE TESTIMONY OF MARK HOSFIELD

This cause comes on for consideration on Kaster Defendants' Motion Pursuant to Fed. R. Evid. 104(a) to Strike Testimony [595] and Farese Defendants' Motion to Exclude Testimony of Mark J. Hosfield [601].[1] The Court finds as follows:

### *BACKGROUND*

Cooper Tire proffers the testimony of Mark J. Hosfield to provide expert testimony on damages suffered by Cooper Tire as a result of the Barnett affidavit. In the present motions, Defendants argue that 1) Hosfield is not competent or qualified to give expert opinions on questions of damages to a publicly traded company as a result of a drop in share price; 2) his methodology is unsupported by research or the experience of valuation experts generally, and is consistently rejected by courts; and 3) he is an unreliable professional expert with a penchant for testifying beyond his own qualifications and facts.

---

[1] Also before the Court is Plaintiff's Motion for Leave to File Sur-reply in Opposition to the Kaster and Farese Defendants' Motion to Strike Testimony of Damages Expert, Mark J. Hosfield [619]. Said Motion is **GRANTED**. The Court also considered Farese Defendants' Rebutter [622] in formulating its Opinion.

*LEGAL STANDARD*

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." ADVISORY COMMITTEE'S NOTE ON 2000 AMENDMENT OF FED. R. EVID. 702.

"[T]he heart of Daubert is relevance and reliability. As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that, qualifications become an issue for the trier of fact, rather for the court in its gatekeeping capacity." Rushing v. Kansas City Southern, 185 F.3d 496, 507 (5th Cir. 1999) (citing Daubert. 509 U.S. at 596, 113 S. Ct. 2789). Under the familiar Daubert/Kumho standards and their progeny, it is not the court's duty to determine whether an expert's testimony is correct in a motion in limine to exclude said testimony. This decision falls squarely with the jury.

To aid in considering the essentials of Rule 702, the decision in Daubert set forth several

factors courts should consider in its gate-keeping functions. The Advisory Committee Note on the 2002 Amendment of Rule 702 sets forth additional factors. For the purpose of clarity, the Court will set forth all of the factors germane to considering whether to open the gate in the following manner:

    1. Is the witness qualified by knowledge, skill, experience, training, or education?

    2. Is the testimony based on sufficient facts?

    3. Is the testimony the product of reliable methods?

    4. Did the witness apply those methods to the facts reliably?

Daubert factors in determining Rule 702 requirements:

    1. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?

    2. Is the theory/technique subject to peer-review or publication?

    3. Is there a known or potential rate of error of the theory/technique when applied?

    4. Were standards and controls used?

Advisory Committee Notes to 2000 Amendment of Federal Rules of Evidence 702 factors:

    1. Did the theory arise from litigation or independent research?

    2. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

    3. Did the expert adequately consider alternative explanations?

    4. Was the expert, "as careful as he would have been in his regular professional work outside his paid litigation consulting?" Sheehan v. Daily Racing Form, Inc., 104 F. 3d 940, 942 (7th Cir. 1997).

    5. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

    A trial judge may consider one or more factors in Daubert. Kumho, 526 U.S. at 141, 119 S.

Ct. 1167. District courts have wide discretion in determining the admissibility of expert testimony. Moore v. Ashland Chem. Inc., 151 F. 3d 269, 274 (5th Cir. 1998).

*DISCUSSION*

1.  Qualifications

Defendants first challenge the qualifications of Plaintiff's expert, Mark J. Hosfield. According to Plaintiff, Hosfield is a Certified Public Accountant and Certified Management Accountant, and he is a former partner at Coopers & Lybrand, Arthur Anderson, and KPMG. Hosfield's hands-on work experience includes corporate management positions such as President of Finance and Corporate Controller, and he has been involved in all aspects of company operations. He holds an undergraduate degree from University of Illinois and a masters degree in management with concentrations in accounting, finance, and operations from Northwest University's Kellogg Graduate School of Management. After graduation, he took additional classes in accounting and business law from Southern Illinois University, and continued his education with classes in business valuation, accounting, and corporate financial issues.

In Hosfield's twenty-five years of accounting practice, he has served as a financial consultant to clients ranging from small, closely-held corporations to some of the largest publicly-traded companies in the world. For more than twenty years, he has served as a consultant and expert witness in commercial disputes. Additionally, in the last twenty years, Hosfield has testified at over sixty trials or arbitrations, including dozens of cases regarding business value damages.

Despite this experience, Defendants point out that Hosfield has never made any formal study, either published or unpublished, as a student or instructor, on the valuation of a public company. Defendants also mention that Hosfield admits he has no experience with the tire industry, has never

4

consulted for a tire firm, and has only made a cursory study of the period in question. However, a "witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; 'a lack of specialization does not affect the admissibility of the opinion, but only its weight.'"Meadowcrest Living Center, LLC v. Hanover Ins. Co., 2008 WL 2959707 (E.D. La. July 30, 2008) (citing Wright v. John Deere Co., 935 F. 2d 1090, 1100 (10th Cir. 1991)); Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F. 2d 167, 176-77 (5th Cir. 1990) (abrogated on other grounds by Little v. Liquid Air. Corp., 37 F. 3d 1069 (5th Cir. 1996) (permitting mechanical engineer who never designed a press brake to testify as to safety of brake design)).

Having considered the parties' briefs on the qualifications of Hosfield, the Court concludes pursuant to Rule 702, Mark J. Hosfield is qualified to testify regarding Cooper Tire's damages by reason of his education background, his training, and experiences. Accordingly, the fact that Hosfield may not have specialized expertise with the tire industry does not preclude him from analyzing and offering expert testimony as to the value of alleged damages suffered by Cooper Tire's market capitalization on May 10, 2002.

2.  Reliability

The primary issue for the court to determine is whether an expert who is qualified by experience, skill, education, or experience has employed a reliable methodology upon sufficient facts to reach a reliable conclusion. In doing so, the Court need not consider all of the factors discussed in Daubert and its progeny or those contained in the Advisory Committee Notes to Federal Rule of Evidence 702. Guy v. Crown Equip. Corp., 394 F. 3d 320, 325 (5th Cir. 2004). Even if all factors are considered, they need not all weigh in favor of reliability. Furthermore, the Court need not even agree with the proffered expert's opinion. Rather, the Court must determine if the opinions

5

are reliable. Id.

Hosfield issued a report on August 15, 2008, evaluating Cooper Tire's damages. Hosfield explained in his report that, as a result of the dissemination of the affidavit on May 10, 2002, Cooper Tire's stock price dropped approximately $500 million in the first hour of trading and that by the end of the day, with a trading volume of 7,653,200 shares, the stock price had dropped 10.99 percent. Hosfield thus found Cooper Tire's damages based upon its loss of market capitalization to be $184,846,800. Hosfield opines that, when company's stock price and market capitalization drops, its investors have determined that the company has lost value, the future expectation for positive cash flow is decreased, and the company has experienced a reduction in its market value. Hosfield further analyzed the price of Cooper Tire stock over an eighteen-year period, from January 1, 1990 to December 31, 2007. This was done to determine if the change in Cooper Tire stock price and trading volume on May 10, 2002, was abnormal and could be attributed to the publication of the affidavit. Hosfield concluded that trading volumes of over two million shares of Cooper Tire stock were atypical, and that price changes in excess of plus or minus 7.5 percent of that stock were likewise atypical. Based upon his analysis of subsequent events, he further concluded that the Cooper Tire stock price never recovered the decrease in price caused by the improper dissemination of the affidavit.

First, Defendants argue that the shares of Cooper Tire that were traded on May 10, 2002, did not belong to Cooper Tire; rather, those shares belonged to the shareholders. Therefore, Defendants contend that the shareholders, not Cooper Tire, is the proper party to recover for alleged damage to its stock value. However, the Mississippi Supreme Court has definitively determined that, under Mississippi law, an action for diminution in stock value belongs to the corporation, not its

6

shareholders. Bruno v. Southeastern Servs., Inc., 385 So. 2d 620, 622-23 (Miss. 1980) (holding that "an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation"). Accordingly, Cooper Tire is the proper party to recover for damage to its stock value.[2]

Further, Defendants' argue that the claim for damage by Cooper Tire regarding loss of market value of stock is based upon pure speculation. Defendants contend that any damage that a corporation attempts to recover should be based on Generally Accepted Accounting Principles. Cooper Tire's 30(b)(6) deponent, Eileen White, admitted that the decline in a company's stock is not a matter that is reported to the Securities and Exchange Commission under the financial section of its report, and she also admitted that the damage from the decline in stock price would not be damages reported to the Securities and Exchange Commission or stockholders according to Generally Accepted Accounting Principles. Additionally, Hosfield acknowledged that the loss which he calculated would not be a loss that the Internal Revenue Service recognizes. The Daubert Court summarized that "'General acceptance' is not a necessary precondition to the admissibility of [] evidence under the Federal Rules of Evidence . . . ." Daubert, 509 U.S. at 597, 113 S. Ct. 2786. To the extent that Cooper Tire's damage is not a loss reported or recognized by either the Securities and Exchange Commission or the Internal Revenue Service, Defendants can raise those points through cross-examination.

Defendants oppose Hosfield's attempt to calculate Cooper Tire's damage through a simple calculation of the "market capitalization" of Cooper Tire as affected by the May 10, 2002, drop in

---

[2] Cooper Tire's additional argument regarding treasury stock loss is rendered moot by this Court's Order [627] and Opinion [628] dated November 26, 2008.

share price. Defendants' experts concede that Hosfield multiplied correctly when following a market capitalization formula, but disagree that Hosfield's method is an appropriate and accurate measure of alleged damage to Cooper Tire. Defendants do agree, however, that conceivably there may be a civil case where market capitalization is a permissible means of calculating damages. Defendants acknowledge that the market capitalization approach may be an appropriate measure of damages in certain circumstances but argue that approach is inappropriate here.

Defendants' challenges to Hosfield's testimony simply are "battle of the expert" issues. The Court notes that its gatekeeping function does not replace the traditional adversary system and the role of the jury within the system. See Daubert, 509 U.S. at 596, 113 S. Ct. 2786. As the Supreme Court held in Daubert, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citing Rock v. Arkansas, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." United States v. 14.38 Acres of Land, 80 F. 3d 1074, 1077 (5th Cir. 1996) (quoting Viterbo v. Dow Chemical Co., 826 F. 2d 420, 422 (5th Cir. 1987)).

This Court is of the opinion that Hosfield's "market capitalization" method in calculating Cooper Tire's damages is an acceptable method. Numerous courts have addressed and admitted testimony of experts who used the market capitalization approach to corporate damages, albeit in cases with dissimilar facts and not as the only method utilized. However, this Court finds that

8

Hosfield's testimony is sufficiently reliable to be admissible under Daubert and, as with the objections to qualifications, the purported weaknesses complained of by the Defendants regarding methodology are the proper subject of cross-examination and goes to the weight of his testimony, not the admissibility. See Daubert, 509 U.S. at 596, 113 S. Ct. 2786. Additionally, as the Daubert Court noted, "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Federal Rule of Civil Procedure 50(a), and likewise to grant summary judgment, Federal Rule of Civil Procedure 56. Id., 113 S. Ct. 2786 (holding that "[t]hese conventional devices, . . ., are the appropriate safeguards where the basis of [] testimony meets the standards of Rule 702").

3.      Relevancy

Federal Rule of Evidence 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." This condition goes primarily to relevance. Thus, under Rule 702, even a qualified expert need not be permitted to testify if, in the district court's broad discretion, the testimony would not assist the jury. United States v. Dixon, 413 F. 3d 520, 524 (5th Cir. 2005). The Court concludes that Hosfield's testimony will assist the trier of fact to understand or determine whether Cooper Tire suffered damages as a result of the publication of Barnett's affidavit. To assist the trier of fact, the opinion or testimony of the expert must relate to an issue in the case and "concern matters beyond the understanding of the average person." 4 WEINSTEIN'S FEDERAL EVIDENCE, § 702.3 (2 ed. 2003); see also United States v. Moore, 997 F. 3d 55, 57 (5th Cir. 1993) ("An expert's testimony may take the form of an opinion if it 'serves to inform the jury about affairs not within the understanding of the average man.'") (quoting

9

United States v. Webb, 625 F. 2d 709, 711 (5th Cir. 1980)). Because the testimony proffered by Hosfield is outside the ordinary knowledge of a layperson and has direct connection to a material issue in the case, the Court finds it comports with Rule 702.

*CONCLUSION*

Based on the submissions of the parties, the record, and the relevant law, the Court finds that Hosfield's testimony comports with Federal Rules of Evidence as well as the standards set forth in Daubert. The Court is of the opinion that Defendants' assertions go to weight rather than to the admissibility of Hosfield's testimony and are most properly tested through "the crucible of adversarial proceedings . . . ." 14.38 Acres of Land, 80 F. 3d at 1079. Therefore, Kaster Defendants' Motion Pursuant to Fed. R. Evid. 104(a) to Strike Testimony [595] and Farese Defendants' Motion to Exclude Testimony of Mark J. Hosfield [601] are **DENIED**.

A separate order in accordance with this opinion shall be issued this day.

**SO ORDERED** this the 9th day of December 2008.

                                                        **/s/ Sharion Aycock**
                                                        **U.S. DISTRICT JUDGE**